

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4883 | **DATE** | 3/3/2003 |
| **CASE TITLE** | Baskin-Robbins Inc. et al.  Vs. Baldev S. Patel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
        ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion and Order. Plaintiffs now move for a preliminary injunction and defendant moves to strike portions of plaintiffs' complaint. Defendant's motion is granted in part and denied in part. We deny the motion for preliminary relief, for now, because we believe an evidentiary hearing is necessary for a limited purpose. Status hearing set for March 13, 2003 at 9:15am.

(11)  ■  [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | MAR 04 2003 | 33 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| WAH | courtroom deputy's initials | | U.S. DISTRICT COURT CLERK 03 MAR -3 PM 2:12 FILED TO Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

BASKIN-ROBBINS INCORPORATED, a )
Delaware corporation, and BASKIN-ROBBINS )
USA, CO., a California corporation, )
            )
            Plaintiffs, )
            )
          vs. )     No. 02 C 4883
            )
BALDEV S. PATEL, an Illinois resident, )
            )
            Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Baskin-Robbins Inc. and Baskin-Robbins USA (Baskin-Robbins) bring this breach of contract action against defendant Baldev S. Patel seeking enforcement of a covenant not to compete. Plaintiffs now move for a preliminary injunction and defendant moves to strike portions of plaintiffs' complaint. For the following reasons, defendant's motion is granted in part and denied in part. We deny the motion for preliminary relief, for now, because we believe an evidentiary hearing is necessary for a limited purpose.

## BACKGROUND

On March 21, 1996, Jay Bhavani, Inc. and Baskin-Robbins USA entered into a franchise agreement and sublease for a Baskin-Robbins retail ice cream store in Glenview, Illinois. Defendant signed the agreement as franchisee on behalf of Jay Bhavani, Inc. The agreement contains a non-compete provision:

> FRANCHISEE further covenants that, except as otherwise approved in writing by BASKIN-ROBBINS, FRANCHISEE shall not, for a continuous and uninterrupted period commencing upon the termination or expiration of this Agreement and continuing for two (2) years thereafter, either directly or

> indirectly, for itself, or through, on behalf of, or in conjunction with any
> person, persons, partnership or corporation, own, maintain, operate, engage
> in, or have any interest in any business which is the same as or similar to the
> Retail Unit and which is located at the Premises or in the building or group of
> buildings in which the Premises are located.

The agreement expired in 1997, but defendant continued to operate the franchise with the consent of plaintiffs. On November 21, 2001, defendant sent plaintiffs a letter informing them that he intended to de-identify from the Baskin-Robbins system and join a competing brand. Baskin-Robbins did not consent to defendant's plan. Defendant subsequently discontinued using the space as a Baskin-Robbins store and opened (and continues to operate) a "KaleidoScoops" retail ice cream store in the same location.

## DISCUSSION

We first address defendant's motion to strike all references in the complaint to the Lanham Act, 15 U.S.C. § 1051 *et. seq.* and to any references to protectable trademarks. The federal trademark statute cited in paragraph four of the complaint does not provide a basis for jurisdiction in this case. Defendant does not contest this conclusion. The references to federal question jurisdiction and the Lanham Act are accordingly stricken.[1] All other references to Baskin-Robbins trademarks and their protection, however, support plaintiffs' allegations of damage to the good will they have created and will remain intact.

To succeed on their motion for preliminary injunction, plaintiffs must demonstrate a likelihood of prevailing on the merits, that they have no adequate remedy at law, and that they will suffer irreparable harm if we do not grant the relief. <u>Promatek Industries, Ltd. v. Equitrac Corp.</u>, 300 F.3d 808, 811 (7th Cir. 2002). If they meet these threshold requirements,

---

[1]We retain jurisdiction over the case under 28 U.S.C. § 1332.

we then balance the harm an injunction would cause defendant against the harm to plaintiffs if the injunction is denied. Finally, we consider the effect that granting or denying the injunction will have on the public. *Id.*

During the course of this litigation two sets of circumstances have emerged. One relates to plaintiffs' emerging franchise policies and their reaction to competition by Kaleidoscoops stores. The other relates to the relationship between Baskin-Robbins and defendant, leading up to this litigation. The parties put very different spins on those circumstances, although those circumstances have but a limited impact upon the legal rights and liabilities in this case.

There appears to be no dispute that plaintiffs have embarked upon a corporate policy to emphasize development of stores offering not only ice cream but also doughnuts and other products, a combination of Baskin-Robbins, Dunkin' Donuts and/or Togo sandwiches. Defendant's store was and is a stand-alone ice cream store. Further, in a number of instances in the past few years, plaintiffs' franchises have been replaced by Kaleidoscoops stores, a trend that has been noted in the media. In some instances, such as here, plaintiffs have sought to assert non-compete rights. These efforts appear to be relatively few in number. In others they have chosen not to litigate, perhaps influenced by a conclusion that they no longer wished to operate a stand-alone store in that location and had no plans to develop a multiple products store there. In still others, the former franchisee sold or lost its interest in the premises and assets – not including any of plaintiffs' proprietary rights – to a third party, who was not constrained by any non-compete obligations and could freely operate as part of the Kaleidoscoops system.

During the time leading up to the litigation, it is also clear that plaintiffs downgraded defendant's trade area to "C," which placed in jeopardy defendant's viability as a going

concern. That rating was later changed to "B" and defendant had been offered a five-year renewal on relatively favorable terms. At the time of the final break, however, we are told that defendant had concerns that plaintiffs might downgrade the area again (a decision over which defendant had no control); that plaintiffs would provide no assurances that they would not develop any multiple product franchise in defendant's competitive area; that defendant could either lose his franchise after five years, or, to secure a longer term, would have to commit to an expensive upgrade; and that plaintiffs would not release him from the non-compete provision in the future.

Plaintiffs' likelihood of success on their claim depends on whether the non-compete clause in the agreement is enforceable. To determine the applicable substantive law in analyzing this contract, we apply Illinois' choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In Illinois, a contract's choice-of-law clause is respected as long as the contract is valid. Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996).

The parties both point to a choice-of-law provision in the agreement to support their differing conclusions of which state law governs the contract. Section 25.1 of the agreement reads:

> This Agreement...shall be construed under the laws of the state in which BASKIN-ROBBINS has its principal place of business; provided, however, that this choice of law shall not include the California Franchise Relations Act or the California Franchise Investment Law, unless such law would otherwise apply, and nothing herein will be deemed to extend or otherwise affect the scope or application of such Acts.

The parties agree that at the time the agreement was signed, Baskin-Robbins' principal place of business was in California. But plaintiffs assert that at the time this suit was filed their principal place of business was (and is) Massachusetts, and Massachusetts law should now be applied.

Under Massachusetts law the non-compete clause would clearly be enforced. *See* Marcum Corp. v. Orchard, 885 F.Supp. 294, 298 (D.Mass. 1995); All Stainless, Inc. v. Colby, 308 N.E.2d 481 (Mass. 1974). California is not as friendly to non-compete clauses, but would most likely uphold this clause as well. Under California law a contract that restrains someone from engaging in a lawful profession, trade, or business of any kind is void. West's Ann. Cal. Bus. & Prof. Code, § 16600. There is an exception to this provision when the contract only restricts someone from a small or limited part of the business or profession. Boughton v. Socony Mobil Oil Co., 41 Cal. Rptr. 714, 716 (Cal. Ct. App. 1964); IBM v. Bajorek, 191 F.3d 1033, 1040 (9th Cir. 1999); General Commercial Packaging v. TPS Package Engineering Inc., 126 F.3d 1131, 1134 (9th Cir. 1997) (one-year covenant to not work for customers introduced in former employment enforceable).

Here, the agreement restricts defendant from operating a retail ice cream store in the same storefront or building as the former store. This does not constitute a restriction from an "entire" business or profession as contemplated by § 16600, and is likely narrow enough to be upheld under California law. Boughton, 41 Cal Rptr. at 716. We also note that at this point defendant has offered no persuasive support for his argument that plaintiffs breached the contract making the non-compete clause unenforceable.[2]

We now turn to the issue of irreparable harm. Plaintiffs point out, and defendant does not dispute, that the franchise agreement states that "FRANCHISEE acknowledges that [his] violation of any of the terms of this Section 15 would result in irreparable injury to BASKIN-

---

[2] Plaintiffs argue in their last of several briefs that §16600 does not apply to non-California franchises. Gilchrist Machinery Co. v. Komatsu American Corp., 601 F.Supp. 1192, 1201 (S.D. Miss. 1984). But that relates to the California Franchise Relations Act, which by its express terms does not apply to out-of-state franchises. We are not cited to any comparable term relating to §16600 and, since defendant has not had an opportunity to respond, we do not rest on that contention.

ROBBINS for which no adequate remedy at law may be available..."(Agreement at 15.8). The disputed non-compete clause is included in section 15.    While persuasive, this provision is not conclusive in the determination of ongoing irreparable harm.

Baskin-Robbins argues further that it has garnered a reputation with consumers who go to its stores based on that reputation or on their own experiences with its products.   They assert that defendant's current activity, operating a similar ice cream retail store in the exact location that was formerly a Baskin-Robbins store, reaps the good will that it has established. We recognize that a company's good will and reputation might be damaged under the scenario alleged by plaintiffs, Promater, 300 F.3d at 812, and that this possible usurping of good will could constitute irreparable harm. See Gateway Easter Ry. Co. v. Terminal R.R. Ass'n, 35 F.3d 1124, 1140 (7th Cir. 1994).

Plaintiffs offer another relevant argument for their claims of irreparable harm, namely that their relationships with other franchisees will be damaged.   A franchiser could be harmed if it had trouble attracting another franchisee to the area now serviced by a competitor, Domino's Pizza v. El-Tan, Inc. , 1995 WL 367893, *3 (N.D. Okla. 1995), or if its franchise system as a whole was undermined. Quizno's Corp. v. Kampendahl, 2002 WL 1012997, *7 (N.D.Ill. 2002) (franchiser would be irreparably harmed if injunction was denied since a message would be sent to other franchisees that their franchise agreements do not protect the franchiser and could be disregarded); Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir. 1982).

On the other side of the balance of hardships, defendant will have to cease operating his business at the same location if the injunction is granted.   He claims that this would effectively put him out of business since moving to a different spot is too costly. But it appears

from the limited record before us that defendant twice passed up a chance to renew his contract with little expense, once in 1999 and again in 2001, and prior to de-identifying with Baskin-Robbins he was informed that he would be breaching the non-compete clause if he went through with his plan. If the evidence presented at the hearing bears out these facts, any harm experienced by defendant may be found self-inflicted and weigh against him in the balance of harms. *See* Pappan Enterprises, Inc. v. Hardee's Food System, Inc. 143 F.3d 800, 806 (3rd. Cir. 1998); Henkel Corporation v. Coral, Inc., 754 F.Supp.1280, 1323 (N.D.Ill. 1990).

The present record does not permit us to conclude that plaintiffs will be irreparably harmed, or what the balance of harms may be. The cases cited by plaintiffs generally refer to decisions after trial, Meineke Discount Muffler v. Jaynes, Bus-Franchise Guide (CCH) ¶10,263 (5th Cir., Aug. 30, 1993); or after an evidentiary hearing, P.P. & K., Inc. v. McCumber, Bus. Franchise Guide (CCH) ¶10,434 (N.D. Ill. March 4, 1994); Domino's Pizza v. El-Tan, Inc., 1995 U.S. Dist. LEXIS 20550 (N.D. Okla); or involved continuing use of trademarks, with a likelihood of confusion and a presumption of irreparable harm, Dunkin' Donuts, Inc. v. Shivem, Inc.. Bus. Franchise Guide (CCH) ¶10,681 (N.J. May 4, 1994). We have not had a hearing and defendant is not using plaintiffs' trademarks.

So far as we know, plaintiffs have no interest in developing a franchise in defendant's neighborhood, even if defendant shuts down. We are led to believe that defendant could sell his assets to another. That undercuts defendant's contention that he will be grievously harmed. Presumably defendant has a devoted clientele at that location, and perhaps he could recoup his entire investment by a sale to someone eager to continue to serve that community. But, perhaps, the apparent history of plaintiffs permitting others, or even the former franchisee, to operate in former Baskin-Robbins locations, undermines plaintiffs' contention

that they need relief here to send a message to potential breakaway franchisees. In short, we need more information – information through the medium of an evidentiary hearing – before we can comfortably assess the relative, and irreparable, nature of the harm.

Lastly, we briefly address any interests of the public in the granting or denying of this injunction. We recognize there is an interest in enforcing valid contracts, including non-compete clauses in franchise agreements. Quizno's, at 8. Defendant proposes that the hardship that he and others in his situation would suffer if forced to comply with the covenant not to compete goes against public interest. We note, however, that if the covenant not to compete in this case is found enforceable, protecting franchisees who breach such covenants will not be in the public interest

## CONCLUSION

Defendant's motion to strike portions of plaintiffs' complaint is granted in part and denied in part. Any references in paragraph four of the complaint to the Lanham Act or to 15 U.S.C. §§ 1116(a) and 1121, and 28 U.S.C. 1331 and 1338 are stricken. The preliminary injunction motion may go forward to an evidentiary hearing.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____ March 3 , 2003.